William Allrutz, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 15, 1982, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

*Robert G. Radebach,* with him *Allen Shaffer,* for petitioner.

*Charles Hasson,* Associate Counsel, with him *James K. Bradley,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, July 29, 1983:

This is an appeal by William Allrutz (Claimant) from the order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision to deny unemployment compensation benefits pursuant to Sections 402(b) and 402(d) of the Unemployment Compensation Law[1] (Law). For the reasons which follow, we vacate and remand.

Claimant was employed by Helm's Express (Helms) to haul steel as an owner-operator.[2] During the Fall of 1978, the Fraternal Association of Steel Haulers (FASH) called a nationwide strike.[3] Claim-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. [1937] 2897, *as amended,* 43 P.S. §§802(b), (d).

[2] As an owner-operator, Claimant was considered by Helms to be an employee, subject to the rules and regulations of the company including disciplinary action and discharge.

[3] The referee found that the purpose of the strike was to compel the establishment of uniform maximum weight limits between the states, to increase freight rates, and to create one license plate for all states.

ant, who was a member of the Teamsters and not a member of FASH, removed his equipment from service for repairs on September 20, 1978, after the strike had been called. Although the equipment passed Helms' inspection on November 12, 1978, Claimant did not return his equipment to service because of news reports of widespread violence and anonymous threatening telephone calls related to the FASH strike. On December 11, 1978, Helms, pursuant to the terms of the employment agreement with Claimant, terminated the agreement because Claimant had not operated his equipment for thirty days.[4]

Claimant filed an application for unemployment compensation benefits. The Office of Employment Security (OES) disapproved this application because it determined that Claimant had voluntarily left his employment without cause of a necessitous and compelling nature. Claimant appealed and, following a hearing, a referee affirmed, with modification, the determination made by OES.[5] The Board affirmed the

---

[4] The referee found that the agreement could be terminated by either party with thirty days notice. Helms' letter of December 11, 1978 terminated the agreement immediately because Claimant had not been dispatched during the previous thirty day period.

[5] The referee modified the decision of OES by concluding that Claimant was ineligible for compensation under Section 402(d) of the Law because he did not satisfy the necessary conditions precedent. Section 402(d) provides as follows:

An employee shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not

decision and order of the referee, and Claimant appealed to this Court.

Because of the reported violence related to the FASH strike, many operators, including Claimant, removed their equipment from service. As a result, numerous claims for unemployment compensation were filed. Eventually, the Board received 138 appeals involving the FASH strike. To administer these appeals, the Board established three claimant classes. The first class was composed of those claimants who were members of FASH. Benefits were denied to this group pursuant to Section 402(d) of the Law. The second class of claimants were part of a three-party situation where an owner leased his equipment to an employer, whose employee operated the equipment. In these cases, the owner took the equipment out of service, and since the employees became involuntarily unemployed, benefits were granted. The third class, of which Claimant is a member, were non-FASH members who took their equipment out of service during the strike. Benefits were denied to this group because they failed to satisfy the three conjunctive tests contained in Section 402(d) of the Law which, when satisfied, render inoperative the exclusion from benefits applied to striking employees.

Among the issues presented to this Court,[6] Claimant argues that his due process rights were violated during the course of hearings held before various referees. Specifically, Claimant, who was unrepresented by legal counsel, argues that he was prejudiced at the

belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

[6] Since our decision to reverse is based upon the denial of due process right we will not discuss the other issues raised.

first hearing because he was not advised of his rights to have an attorney, to offer witnesses and to cross-examine adverse witnesses. In addition, Claimant argues that he was prejudiced because he failed to receive notice of subsequent hearings, held at a distant location for the convenience of Helms.

The Board does not deny that Claimant was not advised of his rights. Instead, the Board contends that the omission was not prejudicial to Claimant. Pursuant to 34 Pa. Code §101.21,[7] the referee has a duty to advise the uncounseled claimant of his right to be represented by an attorney, to offer evidence in his behalf and to cross-examine adverse witnesses. *Shires v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 298, 454 A.2d 680 (1983). Failure to so advise such a claimant will result in a remand unless it can be shown that no prejudice resulted from the omission. *Snow v. Unemployment Compensation Board of Review,* 61 Pa. Commonwealth Ct. 396, 433 A.2d 922 (1981); *Robinson v. Unemployment Compensation Board of Review,* 60 Pa. Commonwealth Ct. 275, 431 A.2d 378 (1981). We cannot agree with the Board's position that Claimant was not prejudiced.

The record shows that a hearing was held in Harrisburg to receive testimony from Claimant. There were no representatives from Helms present at this

[7] The pertinent provision of this regulation relating to the conduct of hearings before an unemployment compensation referee provides as follows:

(a) In any hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

34 Pa. Code §101.21(a).

hearing. Subsequently, three hearings were held in Pittsburgh to receive testimony from Helms and other "similarly situated" claimants. The Board admits that Claimant did not receive notice of these latter hearings. It is the Board's contention, however, that the lack of notice did not prejudice Claimant because "it would be mere conjecture to assume that the Claimant would travel to Pittsburgh . . . especially when his interests were being defended by counsel for the union." Such a comment demonstrates a rather cavalier attitude toward Claimant's right to confront and cross-examine adverse witnesses. Providing notice of a hearing to all interested parties is not discretionary, but mandatory.[8] The decision to invoke or waive due process rights belongs to the claimant, not the Board. In the proceedings held in Pittsburgh, Claimant was not even a named party. There is absolutely no evidence to show that the attorneys for the Teamsters, who represented the named claimants, were aware of Claimant's interest in the proceedings. Nor do we accept the Board's suggestion that the interests of the "similarly situated" claimants were identical to Claimant's interest.[9]

We appreciate the administrative challenge that the appeals relating to the FASH strike presented to the Board. To meet this challenge, the Board conducted consolidated hearings pursuant to 34 Pa. Code

---

[8] 34 Pa. Code §101.85(a) provides as follows:

The tribunal by which the appeal is to be heard shall schedule the appeal promptly for hearing and give at least seven days' notice of the hearing to the parties, their counsel or duly authorized agent, specifying the date, hour and place of hearing and specific issues to be covered at the hearing.

[9] For example, among the claimants present at the Pittsburgh hearing, at least one claimant was a member of both the Teamsters and FASH. The claimant so described would fall into a different class than that of Claimant.

§101.22. The decision to utilize consolidated hearings does not, however, give the Board license to ignore the notice requirements contained in 34 Pa. Code §101.85. Therefore, for all the foregoing reasons, we vacate the order of the Board and remand this matter for rehearing.

### ORDER

Now, July 29, 1983, the Order of the Unemployment Compensation Board of Review, at B-177167, dated October 31, 1979, is hereby vacated and remanded for further proceedings not inconsistent with the foregoing opinion. Jurisdiction is relinquished.